UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

        Plaintiff,

and

RANDY ELDER,                                           Case No. 1:05-CV-677

        Intervening Plaintiff,

                                                                   HON. GORDON J. QUIST

v.

SEELYE-WRIGHT OF SOUTH HAVEN,
INC.,

        Defendant.
_____/

**<u>OPINION</u>**

        Plaintiff, Equal Employment Opportunity Commission ("EEOC"), filed this case on September 30, 2005, pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e to 2000e-17, and Title I of the Civil Rights Act of 1991, alleging that Defendant, Seelye-Wright of South Haven, Inc. ("Seelye-Wright"), violated Title VII by retaliating against its former employee, Randy Elder ("Elder"), for filing a charge of discrimination with the Michigan Department of Civil Rights ("MDCR"). In particular, the EEOC alleges that Seelye-Wright retaliated against Elder by filing a civil action against him in state court alleging that Elder defamed Seelye-Wright when he filed his charge of discrimination alleging sexual harassment by his supervisor. By Order dated December 1, 2005, the Court granted Elder's motion to intervene. Now before the Court are the EEOC's motion for partial summary judgment as to liability and Seelye-

Wright's motion for partial summary judgment regarding punitive damages. For the reasons set forth below, the Court will deny the EEOC's motion and grant Seelye-Wright's motion.

## I. Background and Procedural History

Seelye-Wright operates a car dealership in South Haven, Michigan. In December 2003, Seelye-Wright hired Elder and Vernon Hayes ("Hayes") as car salesmen. Elder and Hayes had previously worked together for another employer and apparently were friends. It also appears that Hayes was a homosexual.

Hayes quit his job at Seelye-Wright on February 5, 2004, and he filed a charge with the MDCR on March 2, 2004, alleging that he had been subjected to sexual harassment at Seelye-Wright. Elder quit his job at Seelye-Wright on or about March 13, 2004. On or about April 5, 2004, Elder filed a charge with the MDCR alleging that he had been sexually harassed by his supervisor based upon his relationship with Hayes and that he was constructively discharged as a result of the harassment. Elder apparently never complained to Seelye-Wright management about the harassment.

Seelye-Wright filed its position statement responding to Elder's charge on May 3, 2004. Prior to that time, Janel Philipczyk, an acquaintance of both Hayes and Elder, informed Seelye-Wright about a conversation that she had with Hayes in which Hayes had asked her to lie and state that she had heard some harassing phone calls from Seelye-Wright employees to Hayes. Philipczyk also stated that Hayes had offered to pay Philipczyk for her false testimony out of any award or settlement that he might receive from Seelye-Wright. In its position statement, Seelye-Wright explained the basis for its belief that Elder had filed his charge as part of a plan or agreement with Hayes to extort money from Seelye-Wright:

2

> It is our contention that Randy Elder has filed this civil rights complaint in conclusion [sic] with complaint [sic] Vernon Hayes for the purpose of extorting monies from our company that would or could be paid as a result of this civil rights investigation, mediation or accompanying civil litigation brought by either or both parties, or our attempt to avoid such mediation or litigation.
>
> . . . .
>
> At no time during his employment did Randy Elder ever complain verbally or in writing about any type of harassment, nor did he allude to any type of personality problems or conflicts with other employees. . . .
>
> Lastly, employees Randy Elder and Vernon Hayes had a personal friendship and relationship that existed before their employment at our dealership and stemmed from a several year working relationship together in the Security Department at Consumers Energy Facility here in South Haven.
>
> Recently a former neighbor of Vernon Hayes and acquaintance of Randy Elder, named Janelle [sic] Philipczyk, came forward with information regarding the civil rights complaints made by both employees and their intention to benefit financially from a settlement or further civil litigation.
>
> She states that Vernon asked her to lie and substantiate that she was present during his claim of phone harassment by employees named in both complaints. She stated Vernon offered her money in exchange for that perjured testimony. We believe that Randy Elders [sic] complaint made just 8 weeks after Vernon Hayes and 3 weeks after he last showed up for work and alleging the same harassment behavior, may have stemmed from a similar promise by or plan to extort monies with form [sic] employee Vernon Hayes from our Company.

(Seelye-Wright Position Statement at 1-2.)

On May 10, 2004, Seelye-Wright's attorney, Edward Annen, Jr., sent a letter to Elder stating that Elder's allegations of sexual harassment were false and defamatory and that Seelye-Wright could prove by clear and convincing evidence that the allegations were false and that Elder knew that they were false when he made them. Annen warned Elder that unless he retracted his false allegations within 21 days, Seelye-Wright would seek exemplary and punitive damages against Elder, presumably in a defamation action. (Letter from Annen to Elder of 5/10/04.)

3

On June 28, 2004, Annen met with Philipczyk and obtained her affidavit describing Hayes' request that she lie for him. On July 14, 2004, after Elder refused to withdraw his charge, Seelye-Wright filed a three-count complaint against Elder and Hayes in the Van Buren County Circuit Court. In its complaint, Seelye-Wright alleged that Hayes and Elder filed complaints with the MDCR alleging that they were subjected to sexual harassment and that both complaints were false. The complaint also attached a copy of the Philipczyk affidavit. Count I alleged a claim for slander/libel against both Hayes and Elder based upon "claims that they knew were false." (State Ct. Compl. ¶ 12.) Count II alleged a claim of civil extortion against Hayes only, based upon the facts asserted by Philipczyk in her affidavit. Finally, Count III alleged claims for malicious abuse of process against both Hayes and Elder for filing false claims with the MDCR.

Shortly after he was served with the complaint, Elder retained an attorney. On September 9, 2004, Elder's attorney wrote to Annen, stating that Elder was immune from liability for filing a civil rights charge and demanding that the case be dismissed within seven days. Approximately one week later, Seelye-Wright filed a stipulated order to dismiss Elder from the case with prejudice. Seelye-Wright continued to prosecute the case against Hayes and eventually obtained a default judgment against him.

The EEOC filed the instant complaint, alleging that Seelye-Wright's filing of the state court complaint against Elder constituted unlawful retaliation under Title VII. Elder's charge of sexual harassment was closed without action on August 23, 2005, after the EEOC filed this case.

## II. Summary Judgment Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. Material facts are facts which are defined by substantive law and are necessary to apply the law. Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. Id.

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Agristor Financial Corp. v. Van Sickle, 967 F.2d 233, 236 (6th Cir. 1992)(quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986)).

### III. Discussion

**A.     EEOC's Motion for Partial Summary Judgment**

The EEOC contends that it is entitled to summary judgment because it is undisputed that Seelye-Wright filed the state court action in response to Elder's charge of discrimination with the MDCR and there is no evidence that Elder had any involvement at all in Hayes' attempt to extort money from Seelye-Wright. Specifically, the EEOC asserts that Annen's May 10, 2004, letter to Elder, the Philipczyk affidavit, and the state court complaint, constitute direct evidence showing that Seelye-Wright filed the state court lawsuit solely in retaliation for Elder's exercise of his protected rights. Moreover, the EEOC argues, Seelye-Wright's contention that Elder was somehow involved in Hayes' scheme to extort money through Phillipczyk's statements is baseless in light of the lack of evidence and allegations connecting Elder to Hayes' scheme.

A plaintiff may establish a claim of retaliation under Title VII. See Weigel v. Baptist Hosp. of E. Tenn., 302 F.3d 367, 381-82 (6th Cir. 2002). "[D]irect evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp., 176 F.3d 921, 926 (6th Cir. 1999). Such "evidence proves the existence of a fact without any inferences or

5

presumptions." Norbuta v. Loctite Corp., No. 98-3013, 1999 WL 357780, at *1 (6th Cir. May 20, 1999) (per curiam).

In the absence of, or in addition to, direct evidence, a plaintiff may establish a retaliation claim by presenting circumstantial evidence under a burden-shifting approach, such as the McDonnell-Douglas framework. See Abbott v. Crown Motor Co., 348 F.3d 537, 542 (6th Cir. 2003). To establish a prima facie case of retaliation under this method, a plaintiff must show that: (1) he engaged in activity protected under Title VII; (2) the employer was aware of the plaintiff's protected activity; (3) he suffered an adverse employment action; and (4) there is a causal connection between the protected activity and the adverse employment action. Singfield v. Akron Metro. Hous. Auth., 389 F.3d 555, 562-63 (6th Cir. 2004). If the plaintiff establishes a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse action. Id. (citing Nguyen v. City of Cleveland, 229 F.3d 559, 562 (6th Cir. 2000)). If the defendant meets its burden, the plaintiff must then demonstrate by a preponderance of the evidence that the proffered reason was mere pretext by showing that the proffered reason: (1) has no basis in fact; (2) did not actually motivate the adverse action; or (3) was insufficient to motivate the adverse action. Id. (citing Manzer v. Diamond Shamrock Chems. Co., 29 F.3d 1078, 1084 (6th Cir. 1994)).

The Court disagrees with the EEOC's characterization of Annen's May 10, 2004, letter, Philipczyk's affidavit, and the state court complaint as direct evidence of unlawful retaliation. The Philipczyk affidavit says nothing about Seelye-Wright's motive for filing suit against Elder. With regard to the letter and the state court complaint, while it is true that those documents show that it was Elder's filing of his charge with the MDCR that prompted Seelye-Wright to file the state court action, those documents do not establish that unlawful retaliation was purpose of the suit. Rather,

those documents state on their face that it was Seelye-Wright's belief that Elder's allegations in his charge were false and defamatory.  The EEOC cannot rely upon these documents alone in order to demonstrate that Seelye-Wright acted with retaliatory motive.  As one court has aptly noted, "those suits initiated in state court in good faith and as an attempt to rehabilitate the employer's reputations which may have been tarnished by the charges are not necessarily violations of the Act."  EEOC v. Levi Strauss & Co., 515 F. Supp. 640, 644 (N.D. Ill. 1981).  That court further noted that the EEOC would be required to "demonstrate that the action was filed for improper, i.e., retaliatory, purposes." Id.  Other courts agree.  See Pettway v. Am. Cast Iron Pipe Co., 411 F.2d 998, 1007 n.2 (5th Cir. 1969) (although the court held that an employer may not discharge an employee for filing with the EEOC a request for reconsideration containing false and malicious statements, the court cautioned that "[w]e in no way imply that an employer is preempted by Section 704(a) from vindicating his reputation through resort to a civil action for malicious defamation");  Urquiola v. Linen Supermarket, Inc., No. 94-14-CIV-ORL-19, 1995 WL 266582, at *1 (M.D. Fla. Mar. 23, 1995) (stating that "[a]n employer is not precluded from filing a defamation suit to vindicate his reputation if the suit is brought in good faith," but "a state court defamation suit filed in retaliation for making an EEOC charge clearly violates Title VII"); Baker v. Summit Unlimited, Inc., 855 F. Supp. 375, 376-77 (N.D. Ga. 1994) (noting that "courts find that initiating legal proceedings against a former employee may be appropriate as long as shown not to be retaliation and brought in good faith"). Because they do not suggest a retaliatory motive on their face, and the EEOC must show that Seelye-Wright had no good faith basis for filing the state court suit, the Annen letter and the state court complaint are not direct evidence of retaliation.  The cases cited by the EEOC as examples of direct evidence cases are distinguishable because they involved employment-related actions by the employer, e.g., a firing or denial of a raise or promotion, rather than a state court defamation action.

7

On the other hand, the Court agrees with the EEOC, and Seelye-Wright seems to agree, that the EEOC has presented a prima facie case of retaliation through circumstantial evidence. That is, Elder engaged in a protected activity by filing his charge with the MDCR and Seelye-Wright was aware that Elder had filed the charge. In addition, as noted above, courts have recognized that an employer's filing of a defamation action in response to an employee's filing of a charge with the EEOC can constitute adverse action. This is consistent with the Supreme Court's recent pronouncement that in contrast to the anti-discrimination provision of Title VII, adverse actions for purposes of the anti-retaliation provision of Title VII are "not limited to discriminatory actions that affect the terms and conditions of employment." Burlington N. & Santa Fe Ry. v. White, __ U.S. __, 126 S. Ct. 2405, 2412-13 (2006). Thus, even though the state court lawsuit occurred outside of the employment setting, it may still constitute adverse action for purposes of the prohibition on retaliation. Finally, the close temporal proximity between Elder's filing his charge and Seelye-Wright's filing the state court action, as well as the express recognition in Annen's letter and the complaint that Elder's charge prompted the state court action, are sufficient proof to establish the causal connection required for a circumstantial case.

Because the EEOC has established a prima facie case, the burden shifts to Seelye-Wright to articulate a legitimate, non-discriminatory reason for its adverse action, and Seelye-Wright has done so, namely, its belief that Elder was involved in Hayes' scheme to obtain money from Seelye-Wright with false evidence. The EEOC contends that it is entitled to summary judgment because it has shown that Seelye-Wright lacked any reasonable factual basis for its asserted belief that Elder was somehow in cahoots with Hayes. In particular, the EEOC points out that Philipczyk testified that Elder was not present when Hayes requested that she fabricate evidence and that Elder had never made such a request to her. It also notes that Annen and Brooks Weber, Seelye-Wright's sales

8

manager, admitted that there is no evidence showing that Elder was present when Hayes made his request to Philipczyk or that Elder made such a request to Philipczyk at any other time. Finally, the EEOC also contends that the facts that Annen's letter to Elder mentions nothing about extortion, that Philipczyk's affidavit does not mention Elder, and that Seelye-Wright did not sue Elder for civil extortion show that its after-the-fact assertion that it believed that Elder was involved in Hayes' extortion scheme was not the true reason for the lawsuit and instead that the true motivation was retaliation. In connection with this argument, the EEOC notes that Annen admitted that the Philipczyk affidavit was an essential prerequisite to filing the complaint, yet, it does nothing to implicate Elder in a plan to obtain money by fabricating evidence.

Contrary to the EEOC's argument, there is ample evidence to show that Seelye-Wright had a good faith basis to file its state court action. The following facts are undisputed: (1) Elder and Hayes had a close relationship that pre-dated their hiring at Seelye-Wright; (2) Hayes quit his job at Seelye-Wright after working for about six weeks and he filed a charge with the MDCR soon thereafter alleging that he had been subjected to sexual harassment at Seelye-Wright; (3) Elder quit his job about six weeks later and, less than one month after quitting, filed a charge with the MDCR alleging that he had been sexually harassed by his supervisor based upon his relationship with Hayes and that such harassment constituted a constructive discharge; (4) Hayes asked Philipczyk to fabricate evidence in order to help him obtain money from Seelye-Wright; and (5) Elder never complained to Seelye-Wright about harassment. In addition, Weber, the sales manager, testified that while Philipczyk did not say that Elder told her to do anything or that he was present when Hayes made his request, she did tell him that Elder was present somewhere inside Hayes' apartment when Hayes made the request. (Weber Dep. at 57-58.) There may be no direct evidence that Elder was involved in Hayes' alleged scheme, but direct evidence of such scheming, or any illegal conspiracy

9

for that matter, seldom exists. A decision as to Elder's participation in the Hayes alleged shakedown must be made from the totality of the facts and circumstances. From the foregoing facts and circumstances, considered in the light most favorable to Seelye-Wright, a reasonable jury could conclude that Elder was involved in Hayes' alleged scheme. Moreover, contrary to the EEOC's assertion, the absence of any allegation in Annen's letter relating to extortion and the absence of a claim in the complaint against Elder for extortion does not show that Seelye-Wright lacked a good faith basis to file its claim. In fact, consistent with the evidence, Annen likely made the decision not to sue Elder for civil extortion because he did not have stronger proof that Elder was involved in Hayes' plan. Civil extortion, however, is neither here nor there, because there is no evidence that Seelye-Wright ever threatened to sue Elder for civil extortion, and, as the EEOC concedes, it did not sue Elder for extortion. Rather, it sued Elder for defamation and, given its knowledge that Elder had never complained to anyone about the alleged harassment, there is plenty of evidence to show that Seelye-Wright had a good faith basis to believe that its defamation claim had merit. In this regard, it is interesting to note that in moving for summary judgment, the EEOC focuses solely upon a claim that was not asserted against Elder, and it fails to argue at all that Seelye-Wright had no good faith basis to assert its defamation or abuse of process claims.[1] To prevail on such claims, Seelye-Wright would have only needed to show that Elder's allegation of sexual harassment was false, and not that Elder was a participant in Hayes' plan (which was not necessary to, but would have strengthened, its defamation claim). Similarly, the fact that Annen agreed to dismiss the state court action shortly after Elder retained counsel says nothing about whether Seelye-Wright had a good faith basis for its suit because it may have simply decided not to spend the money litigating the case.

      Accordingly, the Court will deny the EEOC's motion.

---

[1] Although it could have done so, the EEOC failed to support its motion with an affidavit from Elder to establish that he was not involved in Hayes' plan.

**B.     Seelye-Wright's Motion for Partial Summary Judgment**

Seelye-Wright has filed its own motion for summary judgment on the issue of punitive damages. Seelye-Wright states that it has settled all claims with Elder and that punitive damages remains the only issue. The EEOC contends that its claim for compensatory damages remains, although it fails to explain, in light of Elder's settlement of all of his claims for damages, what compensatory damage claims remain.

"Punitive damages are available in a Title VII claim where the plaintiff can demonstrate by a preponderance of the evidence that the employer 'engaged in a discriminatory practice . . . with malice or with reckless indifference to the federally protected rights of an aggrieved individual.'" Tisdale v. Fed. Exp. Corp., 415 F.3d 516, 531 (6th Cir. 2005) (quoting 42 U.S.C. § 1981a(b)(1)). In Kolstad v. American Dental Association, 527 U.S. 526, 119 S. Ct. 2118 (1999), the Supreme Court addressed the issue of when punitive damages may be awarded under Title VII. The Court held that to be liable for punitive damages under 42 U.S.C. § 1981a, the employer must at least discriminate in the face of a perceived risk that its actions will violate federal law. See id. at 536, 119 S. Ct. at 2125. Under this standard, an employer will not be liable for punitive damages for intentional discrimination where the employer is "unaware of the relevant federal prohibition," "[t]he underlying theory of discrimination may be novel or otherwise poorly recognized, or an employer may reasonably believe that its discrimination satisfies a bona fide occupational qualification defense or other statutory exception to liability." Id. at 537, 119 S. Ct. at 2125. However, a plaintiff need not show that the employer committed "egregious or outrageous acts" to support a request for punitive damages, but evidence of such acts may provide evidence of the requisite "'evil motive.'" See id. at 538-39, 119 S. Ct. at 2126.

Seelye-Wright contends that it is entitled to summary judgment on two grounds. First, it contends that the evidence, which is undisputed, shows that Seelye-Wright did not file the lawsuit in retaliation for Elder's exercise of his federally-protected rights, but instead filed it based upon a good faith belief (supported, in part, by the Philipczyk affidavit) that Elder's charge of sexual harassment was false. Second, it contends that its reliance upon the advice of its counsel, Annen, in filing the lawsuit, shows that it did not act with the requisite intent for a punitive damage award under § 1981a.

In support of its position that it is entitled to summary judgment, Seelye-Wright cites Sackett v. ITC^Deltacom, Inc., 374 F. Supp. 2d 602 (E.D. Tenn. 2005), in which the court, after laying out an exhaustive analysis of Kolstad, observed that a managerial employee's comment upon learning of the plaintiff's pregnancy – that she would probably want her six weeks of pregnancy leave – might demonstrate that the manager had a discriminatory animus toward pregnant employees, but it did not show that the manager knew that firing the plaintiff because she was pregnant would violate her federally-protected rights. Seelye-Wright contends that this case is analogous because the evidence shows that Seelye-Wright acted solely upon the basis of the information contained in the Philipczyk affidavit without knowledge that its actions violated Title VII. The EEOC contends that the evidence in this case is much stronger than in Sackett because the letter from Annen, the absence of any statement in the Philipczyk affidavit implicating Elder in a scheme to fabricate evidence, and the state court complaint show that the sole motivation for the state court lawsuit was unlawful retaliation. The EEOC contends that this case is more similar to Rubinstein v. Administrators of Tulane Educational Fund, 218 F.3d 392 (5th Cir. 2002), and Cronin v. Martindale Andres & Co., 159 F. Supp. 2d 1 (E.D. Pa. 2001). In Rubenstein, a case that was submitted to a jury upon the plaintiff's retaliation claim, there was evidence that the dean of the university's school of

engineering, who had authority over employment decisions concerning the plaintiff, denied the plaintiff a raise because the plaintiff filed a Title VII complaint. See 218 F. 3d at 402, 406. The court found that this evidence was more than sufficient to allow the jury to find that the defendants acted with reckless indifference under the Kolstad standard. In Cronin, a case decided at the summary judgment stage, the plaintiff presented evidence that, in response to her complaints asserting sexual harassment, the defendant's representatives formed a plan for documenting issues with the plaintiff's performance. See 159 F. Supp. 2d at 8. The court concluded that this evidence of management's plan to "'build a case'" for terminating the plaintiff's employment created a genuine issue of material fact as to whether the defendants acted with malice or reckless indifference to the plaintiff's right to complain about sexual harassment. Id.

The Court concludes that Seelye-Wright is entitled to summary judgment on the issue of punitive damages because the EEOC has failed to present evidence showing that Seelye-Wright acted with malice or reckless indifference for Elder's rights under Title VII when it filed the state court lawsuit. As noted above in the discussion regarding the EEOC's motion for summary judgment, the EEOC's arguments focus solely upon the content of the Philipczyk affidavit to the exclusion of all of the other circumstances known to Seelye-Wright at the time it filed the complaint against Hayes and Elder. The EEOC's argument is essentially as follows: (1) Seelye-Wright says that its decision to file the lawsuit was based upon the Philipczyk affidavit; (2) the Philipczyk affidavit does not implicate Elder in Hayes' alleged scheme, let alone mention Elder; (3) Seelye-Wright did not sue Elder for extortion; (4) therefore, unlawful retaliation is the only possible motive for the lawsuit against Elder. Again, the problem with this argument is that while the Philipczyk affidavit did not itself implicate Elder, it did show that Hayes sought to obtain money based upon false evidence. Given that Elder and Hayes had a prior working relationship and were friends, that

Elder quit and filed his charge with the MDCR within weeks after Hayes quit and filed a charge with the MDCR, and that Elder had never complained to management about the alleged harassment, Seelye-Wright had a reasonable basis to conclude that Elder might be involved with Hayes' scheme. The fact that Seelye-Wright sued Elder for defamation and abuse of process and not for extortion merely reflects Annen's likely decision that there was not sufficient evidence to allege a civil extortion claim, even though there was a reasonable basis to allege the other claims. Annen's testimony that he would not have filed the complaint without the Philipczyk affidavit is undisputed and shows that retaliation was not the driving force behind the lawsuit.[2]

### Conclusion

For the foregoing reasons, the Court will deny the EEOC's motion for partial summary judgment and will grant Seelye-Wright's motion for partial summary judgment with regard to punitive damages.

An Order consistent with this Opinion will be entered.


Dated:  October 10, 2006                     /s/ Gordon J. Quist
                                         GORDON J. QUIST
                                         UNITED STATES DISTRICT JUDGE

---

[2] In light of its conclusion regarding the absence of evidence to meet the Kolstad standard, the Court finds no need to address Seelye-Wright's advice of counsel argument.